T.C. Memo. 2003-111

UNITED STATES TAX COURT

CHARLES SHAW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7752-00.                    Filed April 18, 2003.

<u>A. Albert Ajubita</u> and <u>Wanda L. Theriot</u>, for petitioner.

<u>Emile L. Hebert III</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax, penalties, and additions to tax as follows:

| | | Addition to tax and penalties | | |
|------|------------|------------|------------|------------|
| Year | Deficiency | Sec. 6651(f) | Sec. 6654 | Sec. 6663 |
| 1993 | $52,022 | $38,266.50 | $2,137.78 | |
| 1994 | 89,820 | 67,365.00 | 4,660.89 | |
| 1995 | 146,427 | | | $109,820.25 |

Respondent concedes that petitioner is not liable for the addition to tax for fraudulent failure to file for 1993 and 1994 under section 6651(f). Respondent also determined that, if petitioner is not liable for fraudulent failure to file under section 6651(f) for 1993 and 1994, then he is liable for fraud under section 6663(a) for those years. Alternatively, respondent determined that petitioner is liable for an addition to tax for failure to timely file under section 6651(a) and an accuracy-related penalty under section 6662(a) for 1993-95.

After concessions, the issues for decision are:

1. Whether petitioner had unreported gross receipts in 1993 of $252,006, as petitioner contends, or $345,172, as respondent contends. We hold that he failed to prove that he had unreported gross receipts of less than $345,172.

2. Whether petitioner had costs of goods sold of $568,937.79 in 1993, $504,199.79 in 1994, and $560,235.41 in 1995, as petitioner contends, or $74,012 in 1993, $201,963 in 1994, and $101,395 in 1995, as respondent contends. Respondent determined that petitioner's costs of goods sold were $199,073 in 1993, $213,564 in 1994, and $166,142 in 1995. We hold that petitioner failed to prove that his costs of goods sold were more

than respondent determined, and that respondent failed to prove that his costs of goods sold were less than respondent determined.

3.  Whether petitioner may deduct a larger amount for business expenses than respondent allowed for each year in issue. We hold that he may not.

4.  Whether petitioner is liable for fraud under section 6663(a) for 1993-95.  We hold that he is not because respondent did not prove by clear and convincing evidence that petitioner's gross receipts exceeded his costs of goods sold for any of the years in issue.

5.  Whether petitioner is liable for the accuracy-related penalty under section 6662 for 1993-95.  We hold that he is.

6.  Whether petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax for 1993 and 1994.  We hold that we lack jurisdiction to decide this issue because petitioner filed returns for 1993 and 1994.

7.  Whether the statute of limitations bars assessment of tax for 1993.  We hold that it does not because respondent proved by a preponderance of the evidence that the 6-year period to assess tax applies.  Sec. 6501(3)(1)(A).

Unless otherwise specified, section references are to the Internal Revenue Code as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioner

Petitioner resided in Gretna, Louisiana, when the petition was filed.  He was born and raised in China, where he had the equivalent of a high school education in the United States.

Petitioner has lived in the United States since 1984. Petitioner's Chinese name was Xia Zhi Wu.  Petitioner had brothers named Xia Hung, also known as Steven Morgan, who lived in New Orleans in 1984, and Xia Zhi Yuang, who lived in Shanghai, China.

In 1984, Steven Morgan owned a retail framing shop on Bourbon Street in the French Quarter in New Orleans (Bourbon Street store).  Petitioner worked for Steven Morgan at the Bourbon Street store after he arrived in the United States.

Petitioner changed his name to Charles Shaw when he became a U.S. citizen in 1986.  He married Gwendolyn Shaw (Ms. Shaw) in 1986.  They bought the Bourbon Street store from Steven Morgan in 1986 and added retail sales of masks, dolls, T-shirts, posters, and similar merchandise.  They had a daughter who was less than 10 years old during the years in issue.

Petitioner and Ms. Shaw were divorced on September 19, 1991. They did not remarry and were not married at any time during the years in issue.  However, petitioner and Ms. Shaw lived together

in Gretna in 1993 and part of 1994, and in New Orleans during the remainder of 1994 and 1995. Ms. Shaw became the sole owner of the Bourbon Street store sometime before 1993.

In 1992, petitioner owned a residence at 432 Homes Boulevard in Gretna. In 1995, petitioner paid $5,279 in interest and $2,496 in real estate taxes with respect to his personal residence.

B.  Petitioner's Business

In 1993, petitioner started a sole proprietorship known as Far Eastern Artworks Wholesale (Far Eastern) in Terrytown, Louisiana. Far Eastern did business as both a retailer and a wholesaler.

1.  Merchandise

During 1993-95, Far Eastern sold gifts, souvenirs, and Mardi Gras type merchandise. In 1993-95, petitioner bought goods for resale from Shanghai Charles Artware Co., Ltd. (Shanghai Charles), Jindge Zhen Huaxia Artware Co., Ltd. (Jindge Zhen), Bizehen, Shanghai Shen Hong Corp. (Shanghai Shen), Kuang-Yu Wen, Henry's Gifts International Inc. (Henry's Gifts), Boxter Customer Service, The Express Publishing, Mardi Gras Imports, Graphtex, United Gifts, Southland Shirts, Cunningham Posters, Sam's Club, and Jefferson Variety Store. Petitioner paid $8,439 to buy goods for resale from Henry's Gifts in 1993. Shanghai Charles, Jindge

Zhen, Bizhen, Shanghai Shen, and Kuang-Yu Wen were located in China.

### 2. Shipping Charges and Customs House Brokers

Petitioner obtained 70 to 75 percent of his merchandise from China. Petitioner paid shipping charges of $38,682 in 1993, $18,678 in 1994, and $21,401 in 1995 to buy merchandise for Far Eastern to resell.

Petitioner was required to file forms with the U.S. Customs Service (Customs Service) when he imported goods to the United States. He used customs house brokers to prepare and file documents with the Customs Service on his behalf in the years in issue. One of the customs house brokers petitioner used was Panalpina, Inc. (Panalpina). Petitioner also used The Hipage Co., Inc., and Southern Export Services as customs house brokers in 1993.

### 3. Petitioner's Business Expenses

In 1993-95, petitioner incurred business expenses for electricity, gas, garbage removal, termite control, telephone, and travel.

Petitioner traveled to China during each of the years in issue to attend craft and trade shows and to identify merchandise that he could sell. He incurred business travel expenses of $4,188 in 1994.

Petitioner paid $50 per day for about 250 days per year to each of two individuals to help him with the business (e.g., unloading containers) in 1993-95.

4.  Petitioner's and Ms. Shaw's Bank Accounts

During 1993-95, petitioner was a signatory on six bank accounts (petitioner's bank accounts) that he used for his business.

Ms. Shaw also had a business bank account.  Some of the gross receipts from her store were deposited in petitioner's bank accounts in 1993-95.

The following amounts were deposited in petitioner's bank accounts:  $549,478 in 1993, $612,380 in 1994, and $603,049 in 1995.[1]  These deposits included some of Ms. Shaw's income from the Bourbon Street store, which was nontaxable to petitioner, and the following additional amounts that are nontaxable to petitioner:[2]

---

[1]  This included some deposits of income from Ms. Shaw's business, which respondent concedes is a nontaxable source for petitioner.

[2]  Respondent concedes that the following amount of Ms. Shaw's income was deposited in petitioner's bank accounts: $38,834 in 1993, and $12,085 in 1994, and that those deposits were not taxable to petitioner.  Petitioner contends that more than $38,834 of Ms. Shaw's gross receipts was deposited in his bank accounts in 1993.  We discuss petitioner's contention below in par. B-1 of the opinion.

| Item | 1993 | 1994 | 1995 |
|------|------|------|------|
| Interest income | $793 | $410 | $225 |
| Rental income | 2,614 | 11,379 | 12,600 |
| Loans received | 68,000 | 125,000 | 27,000 |
| Credit card advances | -- | 4,000 | -- |
| Tax refunds | 138 | 278 | 548 |
| Insurance proceeds | 25,000 | -- | -- |
| Transfers between accounts | -- | 27,500 | 3,400 |
| Real property sale | 68,427 | -- | -- |
| Total amounts of deposits, not including deposits of Ms. Shaw's income: | 164,972 | 168,567 | 43,773 |

Petitioner received no nontaxable or excludable income, receipts, cash, or other assets during 1993-95, other than as described above.  He received no gifts or inheritances in 1993-95.[3]

## C.   Petitioner's Income Tax Returns

Petitioner and Ms. Shaw met with a representative of H & R Block who prepared joint 1993 and 1994 Federal income tax returns for them.  They did not take any documents to H & R Block. Petitioner and Ms. Shaw timely filed those returns.  They did not report any income or deductions relating to Far Eastern on their 1993 or 1994 returns.  The income and expenses reported on

---

[3]  Contrary to the stipulation of facts, petitioner testified that he received gifts or loans in 1993-95.  However, he does not contend that he deposited those alleged gifts in his bank accounts in 1993-95.  Thus, his testimony about those alleged gifts does not affect the amount of petitioner's unreported gross receipts in 1993-95.

petitioner's and Ms. Shaw's 1993 and 1994 returns related to Ms. Shaw's store.

Petitioner timely filed his 1995 return as a single person. On that return, he reported $221,000 in gross receipts from Far Eastern, but he understated gross receipts from Far Eastern by $338,276, and overstated net rental income by about $5,000.

D.    Respondent's Determination

Revenue Agent Claude Williams (Williams) began to examine petitioner's 1993-95 returns before July 23, 1998.  Petitioner cooperated fully with Williams during the examination. Petitioner signed a document allowing Williams to review petitioner's bank records.  Williams asked petitioner to complete a lengthy form to provide information about his personal living expenses during the years in issue.  Petitioner completed the form with information that Williams believed was fair and complete.

Petitioner did not have many records for Far Eastern.  As a result, Williams reconstructed petitioner's gross receipts for 1993-95 using the bank deposits method.  To reduce photocopying costs, Williams did not obtain copies of petitioner's bank deposit records or canceled checks for the years in issue.

Williams obtained records for Far Eastern from the Customs Service, Panalpina, and Henry's Gifts.  He used those records to try to reconstruct petitioner's shipping costs.  The Panalpina

employee who gave Panalpina's records of petitioner's imports to Williams during the audit of petitioner's 1993-95 tax years was transferred from New Orleans to Chicago, where she was a manager or vice president.  She was subsequently fired or forced to resign from Panalpina.

Petitioner gave Williams a document purporting to be a summary of petitioner's purchases from Jindge Zhen in 1993-95.  Williams included the amounts from that summary in petitioner's costs of good sold for 1993-95.  However, Williams did not include any payments by petitioner to The Hipage Co., Inc., Southern Export Services, Bizehen, Shanghai Shen, Boxter Customer Service, Sam's Club, Jefferson Variety Store, and Kuang-Yu Wen in petitioner's costs of goods sold for 1993-95.  Respondent's determination of petitioner's costs of goods sold is based solely on petitioner's purchases from Henry's Gifts and Jindge Zhen and amounts paid to Panalpina for brokerage services in 1993-95.

Respondent mailed a notice of deficiency to petitioner for 1993-95 on April 11, 2000.

E.    Invoice Summaries of Shanghai Charles and Shanghai Shen

In anticipation of the trial in this case, petitioner obtained documents from one of his brothers in China which purport to be summaries of petitioner's purchases in 1993-95 from Shanghai Charles and Shanghai Shen.

OPINION

A.   Respondent's Determination

Respondent determined that petitioner had unreported income of $139,425 in 1993, $239,655 in 1994, and $375,637 in 1995. Petitioner disputes respondent's determination of his gross receipts for 1993 and costs of goods sold and business expenses for each year in issue.

Petitioner must keep records which are sufficient to calculate his tax liability.  Sec. 6001.  Where, as here, a taxpayer keeps inadequate records, the Commissioner may reconstruct the taxpayer's gross receipts and costs to determine the taxpayer's unreported income.  Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968), affg. T.C. Memo. 1966-81.  As the U.S. Court of Appeals for the Fifth Circuit said in Webb v. Commissioner, supra at 373:

> Arithmetic precision was originally and exclusively in * * * [the taxpayer's] hands, and he had a statutory duty to provide it.  He did not have to add or subtract; rather, he had simply to keep papers and data for others to mathematicize.  Having defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. * * *

Respondent reconstructed petitioner's income for 1993-95 using the bank deposits method because petitioner did not have adequate books and records.  Petitioner points out that Williams did not account for amounts petitioner paid to vendors other than Jindge Zhen and Henry's Gifts even though the documents that

Williams obtained from Panalpina listed other vendors. Petitioner contends that Williams' failure to obtain information from other vendors about how much petitioner paid them in the years in issue means that the determination of costs of goods sold was arbitrary. We disagree.

Williams' analysis is a reasonable basis for the notice of deficiency. Thus, the notice of deficiency is presumed to be correct, and petitioner bears the burden of proving that the deficiencies were less than determined by respondent.[4] Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), affg. T.C. Memo. 1998-121; Calhoun v. United States, 591 F.2d 1243, 1245 (9th Cir. 1978); Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 869 (1991), affd. on other grounds 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. 654, 660 (1990). That burden of proof is important because petitioner lacked important business records. Conversely, there are gaps in Williams' analysis which are important to issues where respondent has the burden of proof; i.e., whether petitioner is liable for fraud, and whether the deficiencies are larger than respondent determined.

---

[4] Sec. 7491(a) does not apply because the examination for each year in issue commenced before July 23, 1998.

B.   Whether Petitioner Had Unreported Income in 1993-95

1.   Petitioner's Gross Receipts for 1993

Respondent contends that petitioner had unreported gross receipts of $345,172 for 1993.  Petitioner contends that he had unreported gross receipts of $252,006 for 1993.

Respondent concedes that $38,834 of petitioner's bank deposits in 1993 was from Ms. Shaw's business, a nontaxable source.  Petitioner contends that, because Ms. Shaw deposited $132,393 from her business in her bank accounts in 1994, and because she testified that her gross receipts were similar for 1993 and 1994, $132,000 from Ms. Shaw's business was deposited in his bank accounts in 1993.

There is no evidence that more than $38,834 of Ms. Shaw's gross receipts was deposited in petitioner's bank accounts in 1993.  Thus, because petitioner has the burden of proving that his gross receipts were less than respondent determined, we conclude that he had unreported gross receipts of $345,172 in 1993.[5]

2.   Costs of Goods Sold

a.   Positions of the Parties

Respondent determined that petitioner had costs of goods sold of $199,073 for 1993, $213,564 for 1994, and $166,142 for

---

[5] Petitioner concedes that he had unreported gross receipts of $431,728 for 1994 and $338,276 for 1995.

1995. Petitioner contends that he had costs of goods sold of $568,937.79 in 1993, $504,199.79 in 1994, and $560,235.41 in 1995. Petitioner bears the burden of proving that his costs of goods sold for 1993-95 were greater than respondent determined. Rule 142(a)(1).

Respondent contends that petitioner had costs of goods sold of $74,012 for 1993, $201,963 for 1994, and $101,395 for 1995. Respondent bears the burden of proving that costs of goods sold are less than respondent determined. Id.

b. Whether Documents Bearing the Names Shanghai Charles, Shanghai Shen, and Jindge Zhen Are Admissible

Petitioner offered what appears to be summaries on company invoice forms bearing the names of Shanghai Charles (Exhibit 79-P), Shanghai Shen (Exhibit 80-P), and Jindge Zhen (Exhibit 81-P) to show the amounts he paid to those companies in 1993-95. Exhibits 79-P and 80-P are dated "Jane 7 2001" (sic). Exhibit 81-P is not dated. Exhibits 79-P and 81-P are stamped with a company seal but not signed. Exhibit 80-P is signed by an unidentified person but not stamped with a company seal. The summaries state that petitioner paid the following amounts for merchandise:

| Merchant | 1993 | 1994 | 1995 |
|---|---|---|---|
| Shanghai Charles | $194,000 | $181,500 | $149,000 |
| Shanghai Shen | 115,000 | 94,500 | 103,500 |
| Jindge Zhen | 174,500 | 131,600 | 154,400 |
| Total | 483,500 | 407,600 | 406,900 |

The parties stipulated that we may treat Exhibits 90-J and 91-J as statements of petitioner's brother, Xia Zhi Yuang (Xia Zhi Yuang's statements), in China.  According to those statements, the information in Exhibits 79-P and 80-P was created by accountants for Shanghai Charles and Shanghai Shen in 2001 at petitioner's request and then translated into English. Petitioner contends that Xia Zhi Yuang's statements show that all of the requirements for admissibility under rule 803(6) of the Federal Rules of Evidence[6] have been met for Exhibits 79-P, 80-P, and 81-P.  We disagree.  There is no evidence that Exhibits 79-P, 80-P, or 81-P were contemporaneously made, were regularly kept, were based on information transmitted by a person with knowledge, or that the witness was qualified to provide the information. Exhibits 79-P, 80-P, and 81-P lack trustworthiness because they

---

[6] Fed. R. Evid. 803(6) provides as follows:

(6) Records of regularly conducted activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

were unaccompanied by any underlying business records and because the accountants and translators are not identified in the record. Fed. R. Evid. 803(6); see also Fed. R. Evid. 1006.

Petitioner contends that this case is like Gerling Intl. Ins. Co. v. Commissioner, 98 T.C. 640 (1992), in which we admitted summaries. We disagree. The summaries in Gerling were made at or near the time of the events recorded in the summaries and were regularly kept. Id. at 652-653. That is not the case here. We conclude, as we did at trial, that Exhibits 79-P, 80-P, and 81-P are inadmissible.

### c. Whether Petitioner's Costs of Goods Sold Were Greater Than Respondent Determined

Petitioner contends that Exhibits 79-P, 80-P, and 81-P show that his costs of goods sold were greater than respondent determined. We disagree because, as discussed above at paragraph B-2-b, those exhibits are not in evidence.

Petitioner contends that Williams failed to count all of petitioner's costs of goods sold because Panalpina's numerical codes made it difficult to retrieve all records of petitioner's imports. Petitioner also contends that the Panalpina records are unreliable because the Panalpina employee who gave them to respondent was not competent to do so because she was fired or forced to resign.

Petitioner's criticism of Williams and Panalpina misses the mark because petitioner bears the burden of proving that his

costs of goods sold for the years in issue were greater than respondent determined.

        d.    <u>Whether Petitioner's Costs of Goods Sold Were Less Than Respondent Determined</u>

Respondent contends that petitioner's costs of goods sold were less than the amounts determined in the notice of deficiency. Respondent contends that respondent erroneously credited payments to Jindge Zhen in calculating petitioner's costs of goods sold for 1993-95 as a result of relying on a document that is unreliable. Respondent determined and contends that petitioner had cost of goods sold as follows:

| | Notice of Deficiency | | | Litigating Position[1] | | |
| --- | --- | --- | --- | --- | --- | --- |
| <u>Supplier</u> | <u>1993</u> | <u>1994</u> | <u>1995</u> | <u>1993</u> | <u>1994</u> | <u>1995</u> |
| Henry's Gifts | -- | $73,189 | $4,050 | $8,439 | $73,189 | $4,050 |
| Panalpina | $24,573 | 8,774 | 7,692 | 24,573 | 8,774 | 7,692 |
| Jindge Zhen | 174,500 | 131,600 | 154,400 | -- | 56,000 | 58,100 |
| Shanghai Charles | -- | -- | -- | 41,000 | 64,000 | 9,000 |
| Express Publishing | -- | -- | -- | -- | -- | 1,260 |
| Certified Merchant Svcs. | -- | -- | -- | -- | -- | 1,175 |
| Mardi Gras Imports | -- | -- | -- | -- | -- | 6,145 |
| Graphtex | -- | -- | -- | -- | -- | 2,519 |
| United Gift and Novelty | -- | -- | -- | -- | -- | 8,958 |
| Southland Shirts | -- | -- | -- | -- | -- | 1,163 |
| Cunningham Enterprises | -- | -- | -- | -- | -- | 1,333 |
| Total | 199,073 | [2]213,563 | 166,142 | 74,012 | 201,963 | 101,395 |

    [1] Respondent's litigating position is based on amounts contained in the stipulation. However, the parties did not stipulate that these amounts included all of petitioner's costs of goods sold.

    [2] Respondent determined that petitioner's costs of goods sold were $213,564 for 1994. The $1 discrepancy is unexplained in the record.

Respondent bears the burden of proof on this point. Rule 142(a)(1). To meet this burden, respondent must show that petitioner's cost of goods sold for each year in issue was less

than respondent determined for that year.  Respondent does not meet this burden by pointing out gaps in petitioner's proof.  In calculating petitioner's costs of goods sold, respondent did not account for any payments to The Hipage Co., Inc., Southern Export Services, Bizehen, Shanghai Shen, Boxter Customer Service, Sam's Club, Jefferson Variety Store, and Kuang-Yu Wen in 1993-95, despite the fact that these are companies with which Far Eastern did business during the years in issue.  Williams did not obtain canceled checks from petitioner's bank accounts for the years in issue because they were numerous and he thought that his supervisor would not approve the cost of copying them.  This suggests that respondent did not count all of petitioner's costs in calculating petitioner's costs of goods sold.  Respondent's apparent failure to account for payments to some of the companies with which Far Eastern did business and respondent's failure to obtain petitioner's checks casts doubt on respondent's contention that petitioner's costs of goods sold is less than respondent determined.

Respondent has not shown that petitioner's costs of goods sold were less than respondent determined.

e.   Conclusion

We conclude that, because neither party has proven otherwise, petitioner had costs of goods sold as respondent

determined in the amounts of $199,073 in 1993, $213,564 in 1994, and $166,142 in 1995.

### 3. Petitioner's Business Expense Deductions

Petitioner contends that he may deduct greater amounts for business expenses than respondent allowed. We disagree for reasons discussed below.

#### a. Insurance

Petitioner contends that he may deduct insurance expenses of $2,803.25 in 1994 and $2,280 in 1995. There are four canceled checks in evidence written by petitioner to insurance companies in 1994 and 1995. However, there is no evidence that these payments were for petitioner's business.

#### b. Supplies

Petitioner contends that three checks that he wrote to Sam's Club, Home Supplies, and Jefferson Variety Store, Inc., were business expenses. However, there is no evidence that these payments were for business expenses.

#### c. Travel

The parties stipulated that petitioner incurred business-related travel expenses of $4,188 in 1994. There is no evidence showing the amount of petitioner's travel expenses for 1993 or 1995. Petitioner contends that he may deduct expenses that he and Ms. Shaw incurred to attend a festival of rural craftsmen in China in each year in issue. However, there is no evidence

showing how much he spent to travel to the festivals.  Thus, petitioner may not deduct more than $4,188 for travel expenses in 1994 and $0 for 1993 and 1995.

### d.    Other Expenses

Respondent determined that petitioner did not substantiate, and therefore may not deduct, expenses for electricity, telephone, sewage, water, labor, and transportation used in his business.  Petitioner asks us to estimate the amount of these expenses under Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930); see also Bayou Verret Land Co. v. Commissioner, 450 F.2d 850, 858 (5th Cir. 1971), affg. 52 T.C. 971 (1969).  The taxpayer must present credible evidence that provides a rational basis for our estimate.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Petitioner offers only the vaguest estimates of his costs.  It is not appropriate under Cohan for us to guess the amounts of his expenses.  Thus, petitioner may not deduct any amounts for miscellaneous business expenses.

### 4.    Conclusion as to Unreported Income

Petitioner has not shown that he had unreported income less than $139,425 in 1993, $239,655 in 1994, and $375,637 in 1995, as determined by respondent.  Thus we sustain respondent's determination.

C.   Whether Petitioner Is Liable for Fraud Under Section 6663(a)

   1.   Background

Respondent contends that petitioner is liable for the penalty for fraud under section 6663(a) for 1993-95.  Fraud is actual, intentional wrongdoing designed to evade a tax believed to be owing.  Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81.  To prevail, the Commissioner must prove by clear and convincing evidence:  (a) Petitioner underpaid tax for each year in issue, and (b) some part of the underpayment is due to fraud.  Secs. 6663(b), 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. at 660-661; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).  If respondent shows that any part of an underpayment is due to fraud, the entire underpayment is treated as due to fraud unless the taxpayer shows by a preponderance of the evidence that part of the underpayment is not due to fraud.  Sec. 6663(b).

The fact that petitioner failed to meet his burden of proof on the underlying deficiencies in this case does not relieve respondent of the burden to prove, by clear and convincing evidence, both elements of fraud.  Fairchild v. United States, 240 F.2d 944, 947 (5th Cir. 1957); Olinger v. Commissioner, 234 F.2d 823 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-9; Drieborg v. Commissioner, 225 F.2d 216, 218 (6th

Cir. 1955); Estate of Beck v. Commissioner, 56 T.C. 297, 363 (1971); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969).

2.  Underpayment

Respondent contends that petitioner had an underpayment in each of the years in issue.  Respondent contends that respondent has shown that the amounts deposited in petitioner's bank accounts (less nontaxable deposits) are greater than the amount of petitioner's costs of goods sold for each year in issue.  Petitioner stipulated to the amounts deposited in his bank accounts in each year in issue.  However, for reasons described below, respondent had not shown by clear and convincing evidence that petitioner had an underpayment for each year in issue.

If a taxpayer alleges that he or she had a nontaxable source of income, respondent may satisfy the burden of proving that the taxpayer had an underpayment by disproving that nontaxable source.  United States v. Massei, 355 U.S. 595 (1958).  As discussed at paragraph B-1, above, petitioner contends that $132,000 of Ms. Shaw's gross receipts in 1993 was deposited in his bank accounts in 1993.  Respondent contends that no more than $38,834 of gross receipts from Ms. Shaw's business was deposited in petitioner's bank accounts in 1993.  However, respondent has not proved that no more than $38,834 of receipts from Ms. Shaw's business was deposited in petitioner's bank accounts in 1993.

To show an underpayment for purposes of the fraud penalty, respondent must show by clear and convincing evidence that petitioner had an underpayment of tax for each year in issue. Once respondent shows that a taxpayer had unreported income, respondent generally does not have the burden of proving that the taxpayer does not have any unclaimed costs of goods sold or deductions that would offset the unreported income.  United States v. Bender, 218 F.2d 869, 871-872 (7th Cir. 1955); United States v. Stayback, 212 F.2d 313, 317 (3d Cir. 1954); Clark v. United States, 211 F.2d 100, 103-104 (8th Cir. 1954); Franklin v. Commissioner, T.C. Memo. 1993-184; Perez v. Commissioner, T.C. Memo. 1974-211.

In contrast, to show an underpayment in a case in which there appears to be a genuine basis for believing the taxpayer's claim that costs of goods sold and expenses were substantial, the Commissioner must prove that the taxpayer had at least some unreported net income; i.e., that the taxpayer's gross receipts exceeded the taxpayer's costs of goods sold and deductions.  AJF Transp. Consultants, Inc. v. Commissioner, T.C. Memo. 1999-16, affd. without published opinion 213 F.3d 625 (2d Cir. 2000); Cox v. Commissioner, T.C. Memo. 1993-559; CHEM, Inc. v. Commissioner, T.C. Memo. 1993-520; Van Vorst v. Commissioner, T.C. Memo. 1993-353; McNichols v. Commissioner, T.C. Memo. 1993-61, affd. 23 F.3d 932 (1st Cir. 1993); Zack v. Commissioner, T.C. Memo. 1981-700,

affd. 692 F.2d 28 (6th Cir. 1982); Rivera v. Commissioner, T.C. Memo. 1979-343; Perez v. Commissioner, supra; H.J. Feinberg & Co. v. Commissioner, a Memorandum Opinion of this Court dated Sept. 20, 1950; see Franklin v. Commissioner, supra at n.4.

There appears to be a genuine basis for petitioner's claim that his business had substantial costs of goods sold that could have offset the unreported gross receipts and eliminated underpayment of taxes. Thus, respondent must show by clear and convincing evidence that petitioner's unreported gross receipts exceeded his costs of goods sold. Respondent did not do so.

Williams used the sources and applications method to reconstruct petitioner's income. Williams testified that petitioner cooperated by providing reasonable information about his living expenses. However, respondent did not offer that data into evidence. We infer from respondent's failure to offer that data into evidence that petitioner's living expenses do not support respondent's determination. Singleton v. Commissioner, 65 T.C. 1123, 1144 (1976) (the Commissioner's failure to call a certain witness gives rise to the inference that any proof, if offered, would have been unfavorable), affd. 606 F.2d 50 (3d Cir. 1979); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Apothaker v. Commissioner, T.C. Memo. 1985-445 (the Court may infer from the Commissioner's failure to offer into evidence the taxpayer's

bank records that those records would not support the determination).

We conclude that respondent has not shown by clear and convincing evidence that petitioner had an underpayment for each year in issue.[7]  Thus, petitioner is not liable for the fraud penalty for 1993, 1994, or 1995.[8]

D.   Whether Petitioner Is Liable for the Accuracy-Related Penalty for 1993-95 Under Section 6662

In the alternative to fraud, respondent determined and contends that petitioner is liable for the accuracy-related penalty for negligence under section 6662 for 1993-95. Petitioner did not address this issue at trial or on brief.  A taxpayer may be deemed to have conceded an issue that was raised in the petition if he or she made no argument at trial or on brief relating to that issue.  Levin v. Commissioner, 87 T.C. 698, 722-723 (1986), affd. 832 F.2d 403 (7th Cir. 1987); Zimmerman v. Commissioner, 67 T.C. 94, 104 n.7 (1976).  We conclude that petitioner is liable for the accuracy-related penalty under section 6662(a) for 1993-95.

---

[7]  This case is similar to Chin v. Commissioner, T.C. Memo. 1994-54, in which the Commissioner used the bank deposits method to reconstruct income, and we held that the Commissioner had not shown by clear and convincing evidence that the taxpayer had an underpayment.

[8]  In light of our conclusion, we need not decide whether respondent established by clear and convincing evidence that petitioner intended to evade tax in each year in issue.

E.   Whether Petitioner Is Liable for the Addition to Tax for
     Failure To Pay Estimated Tax Under Section 6654

Respondent determined and contends that petitioner is liable

for the addition to tax under section 6654 for failure to pay

estimated tax for 1993 and 1994.  Respondent concedes that

petitioner filed returns for 1993 and 1994.  Thus, we lack

jurisdiction to decide whether petitioner is liable for the

addition to tax under section 6654 for 1993 and 1994.  See sec.

6665(b)(2); Fendler v. Commissioner, 441 F.2d 1101 (9th Cir.

1971); Meyer v. Commissioner, 97 T.C. 555, 562 (1991); Estate of

DiRezza v. Commissioner, 78 T.C. 19, 25-26 (1982).

F.   Whether the Statute of Limitations Bars Assessment of
     Petitioner's 1993 Tax Liability

Petitioner filed his 1993 return on or before April 15,

1994.  Respondent mailed the notice of deficiency on April 11,

2000.  Petitioner contends that the time to assess tax for 1993

expired before respondent issued the notice of deficiency.  We

disagree.

Generally, the Commissioner must assess tax within 3 years

after the due date of a timely filed return.  Sec. 6501(a).

Respondent bears the burden of proving that an exception to the

3-year limit on the time to assess tax applies if, as here as to

1993, the notice of deficiency was mailed more than 3 years after

the filing date.  Wood v. Commissioner, 245 F.2d 888, 893-895

(5th Cir. 1957), affg. in part and revg. in part T.C. Memo. 1955-

301; Bardwell v. Commissioner, 38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963).

Respondent contends that respondent has 6 years to assess tax under section 6501(e)(1)(A) because petitioner omitted more than 25 percent of his gross income for 1993.  Although respondent must prove fraud by clear and convincing evidence, respondent need only prove a 25-percent omission from income by a preponderance of the evidence.  Armes v. Commissioner, 448 F.2d 972, 974-975 (5th Cir. 1971), affg. in part and revg. in part T.C. Memo. 1969-181.

For purposes of section 6501(e)(1)(A)(i), "gross income" includes the amounts received or accrued from the sale of goods or services without considering the cost of those sales or services.  Id.; sec. 301.6501(e)-1(a)(1)(ii), Proced. & Admin. Regs.  Thus, we do not consider petitioner's costs of goods sold in deciding whether he omitted 25 percent of his gross income for a year.

Petitioner and Ms. Shaw reported gross receipts of $26,810 on Schedule C of their 1993 return.  We need not decide whether to calculate the 25 percent omission based on the amount petitioner reported ($0), or the amount reported on the purported joint return ($26,810), if respondent shows that petitioner omitted more than $6,701.50 (25 percent of $26,810).  Respondent made that showing because petitioner concedes that he had

unreported gross receipts of $252,006 in 1993, and $338,276 in 1995. Respondent has proved by a preponderance of the evidence that section 6501(e)(1)(A) applies.

We conclude that the statute of limitations does not bar assessment of tax for 1993.

To reflect concessions and the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.