LUTHERAN MUTUAL LIFE
INSURANCE COMPANY,
Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 86–1232, 86–1465.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1986.

Decided April 6, 1987.

Rehearing and Rehearing En Banc
Denied May 15, 1987.

Bruce Graves of Des Moines, Iowa, for appellant.

David I. Pincus, Dept. of Justice, Washington, D.C., for appellee.

Before McMILLIAN, ARNOLD, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

This appeal and cross-appeal involve the application of former section 804(c)(1) of the Internal Revenue Code of 1954, which provided for the deduction, by life insurance companies, of "investment expenses" in the computation of "taxable investment income."

Lutheran Mutual Life Insurance Company (taxpayer) is a mutual life insurance company organized under the laws of Iowa.[1] During the years at issue it qualified as a "life insurance company" under section 801(a) of the Internal Revenue Code of 1954, and, thus, was subject to tax under sections 801–820 of the Internal Revenue Code.[2] Taxpayer's taxable income during those years was greater than its gain from operations, and therefore under I.R.C. § 802(b) it paid federal income tax based upon its taxable investment income.

In its tax return for the years 1973 through 1977, taxpayer deducted as investment expenses the full amount of income taxes it paid to Minnesota, Illinois, Florida, and New York. I.R.C. § 804(c)(1). On audit, the Internal Revenue Service (IRS) disallowed those deductions in full. Taxpayer paid the resulting additional tax and filed a refund claim with the IRS. In the refund claim, however, taxpayer modified its position on the state taxes. It sought as an investment expense only that portion of the state taxes that corresponded to the ratio of its gross investment income to total gross income. The IRS denied the refund claim, and taxpayer filed a tax refund suit in district court.

All of taxpayer's policies of permanent life insurance provide that the insured can borrow all or any part of the cash value of the policy as a policy loan. Once a policy loan has been made, the amount of the loan draws interest at the rate specified in the policy. The interest is either billed to and paid by the insured or charged against the

policy's cash value. Such interest paid or accrued was for federal income tax purposes required to be included as a part of taxpayer's gross investment income under I.R.C. § 804(b)(1).[3]

In 1977, the United States District Court for the District of South Carolina held that that portion of commissions paid by a life insurance company to its agents which is fairly allocable to policy loan services is deductible as an investment expense pursuant to I.R.C. 804(c)(1). *Liberty Life Ins. Co. v. United States*, 40 A.F.T.R.2d (P–H) 77–5575 (D.S.C.1977), *aff'd* 594 F.2d 21 (4th Cir.1979). Upon learning of the District Court's decision in *Liberty Life* in early 1978, taxpayer set out to determine what expenses it had incurred that were directly related to the production of that investment income. It decided to allocate to expenses that portion of its agency field force attributable to their policy loan service work. To accomplish such allocation, taxpayer needed to determine the amount of time spent by its agents on policy loan service work.

Taxpayer asked its assistant vice president of marketing, Gerald Vallem, to compose and send to 25 of its 250–275 agents a letter asking the agents to keep track of the amount of time they spent on policy loan matters during an upcoming one-month period. Vallem received responses from 19 of the 25 agents asked to participate in the survey. The forms submitted by the 19 agents who responded indicated that they had spent from zero to 13 percent of their time working on policy loan matters during the month in question. The average was three percent. Based on the results of the survey, taxpayer allocated to investment expenses three percent of the total compensation paid to taxpayer's active field agents and agency managers for 1972–1977.

---

1. Effective January 1, 1985, taxpayer changed its name to Century Life of America.

2. These provisions were replaced by new sections 801 through 818 by the Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494, Sec. 241. Internal Revenue Code (I.R.C.) section references, unless otherwise specified, will be to the

sections as they existed during the tax years at issue.

3. During the years in issue, taxpayer included in excess of $12 million of policy loan interest in its gross investment income.

In 1978, taxpayer filed a claim seeking a refund of taxes previously paid during the years 1972 through 1977. Taxpayer claimed that it was entitled to deduct as an investment expense that portion of its field force expenses attributable to servicing policy loans as established by its survey. The IRS denied taxpayer's claim, and taxpayer instituted a refund suit. The two suits were consolidated and tried to the court.[4]

The district court denied taxpayer a deduction for the expenses relating to the servicing of policy loans, but held that it could deduct as an investment expense a portion of the state taxes it paid to Illinois, Florida, and Minnesota.[5] Taxpayer was awarded a tax refund in the amount of $146,049.16. Both the government and taxpayer appeal. We affirm.

## A. Taxpayer's Appeal

Taxpayer attempted to establish the amount of time spent by its agents on policy loan servicing activities by introducing the survey conducted by Vallem. The district court held that taxpayer had failed to prove by a preponderance of the evidence that it was entitled to deduct three percent of its field force costs as investment expenses. The district court found that taxpayer's survey lacked the necessary circumstantial guarantees of trustworthiness and that taxpayer had failed to prove that the survey was conducted in accordance with generally accepted survey principles.

■ To establish the trustworthiness of a survey, it must be shown (1) that a proper "universe" was examined and a representative sample was chosen; (2) that the persons conducting the survey were experts; (3) that the data were properly gathered and accurately reported; (4) that the sample design, the questionnaires, and the manner of interviewing met the standards of objective surveying statistical tech-

niques; and (5) that the interviewers, as well as the respondents, were unaware of the purpose of the survey. *Pittsburgh Press Club v. United States*, 579 F.2d 751 (3rd Cir.1978); Judicial Conference of the United States, *Handbook of Recommended Procedures for the Trial of Protracted Cases*, 25 F.R.D. 351, 429 (1960).

■ Taxpayer failed to satisfy these requirements. First, there was neither a showing that the proper universe was examined nor that a representative sample was drawn from that universe. The universe chosen was full-time insurance agents, whereas the proper universe consisted of all of taxpayer's agents who received compensation with respect to which taxpayer was seeking to make its tax allocation, including part-time agents and agency managers. Moreover, instead of using a random sample from the universe chosen, Vallem personally selected the agents to receive the questionnaire.

Second, the survey was not conduced by an expert. Vallem's only background in survey research design and statistical analysis was a statistics course taken 14 years before this survey was conducted. On cross-examination he admitted that he did not know whether his survey technique was mathematically correct, stating, "I guess I was going on my knowledge of the sales force as overriding the correct or mathematical sampling technique." True, Vallem has had broad experience in the life insurance industry, having joined taxpayer in 1965 and having earned the Chartered Life Underwriter designation in 1970 and the Fellow of the Life Management Institute designation in 1978. Our conclusion that he is not an expert in conducting surveys is not intended to depreciate his overall expertise in the life insurance industry.

Third, taxpayer did not establish that the questionnaire and the manner of interviewing met the standards of objective surveying. For whatever reason, almost one-

---

4. The Honorable Edward J. McManus, United States Senior District Judge for the Northern District of Iowa.

5. The district court ruled against taxpayer on the New York taxes based on its failure to establish that it had derived investment income from investment activities in that state. Taxpayer does not appeal from this ruling.

quarter of those sent questionnaires failed to respond.

Finally, it is clear that Vallem knew the purpose of the survey, and it is likely that some of the participants were likewise aware. The letter to the participants informed them that the information solicited "could affect the company financially" and would be used "as imput for a specific study being conducted by a company committee dealing with corporate finances and taxes."

Taxpayer contends, however, that because the survey was akin to an experiment conducted under conditions substantially similar to actual conditions and not in the nature of the poll in *Pittsburgh Press Club*, the survey need not have met as high a standard of trustworthiness. *See, Randall v. Warnaco, Inc., Hirsch-Weis. Div.*, 677 F.2d 1226 (8th Cir.1982); *Collins v. B.F. Goodrich Co.*, 558 F.2d 908 (8th Cir.1977). Granted, the survey in the present case was different from those designed to seek the attitudinal responses of those surveyed. Perhaps a less stringent application of generally accepted sampling techniques might well have been applied by the trial court. Still and all, the survey partook more of an anecdotal (dread word) rather than an empirical inquiry.

Although we might have been inclined to accept the results of the survey, applying a little Kentucky windage to compensate for the empirical inadequacies inherent in the somewhat amateurish manner in which the survey was conducted, we cannot say that the district court erred in holding that tax-

payer had failed to prove by a preponderance of the evidence that it was entitled to deduct three percent of its field force costs as an investment expense.[6]

Likewise, given the lack of evidentiary support for taxpayer's claimed deductions, we cannot say that the trial court erred in declining to uphold at least some deduction under *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir.1930).

## B. Government's Appeal

The investment expense deduction authorized by I.R.C. § 804(c)(1) includes two distinct types of expenses: investment expenses, which are fully deductible, and general expenses, which are included in the investment expenses to the extent to which they benefit the investment department. *See* Treas.Reg. § 1.804–4(b)(1)(i) & (ii).[7]

The district court found that the income taxes imposed by the states of Minnesota, Illinois, and Florida related to taxpayer's investment income and were reasonably susceptible to division and allocation to different departments. These taxes were thus found to be deductible as a general expense assignable in part to investment expenses in accordance with the ratio of taxpayer's gross investment income to its total income.[8] The government contends, however, that a tax on the privilege of doing business cannot be construed as directly related to the production of investment income and that an expense, whether or not "general" or "actual," must be so

**6.** Taxpayer argues that Vallem's testimony was sufficient evidence to support a finding in its favor. Vallem's opinion, however, was based largely on the results of the flawed survey. The district court therefore could, as it presumably did, discount such testimony.

**7.** The statute does not define "investment expenses" or "general expenses." The Treasury Regulations provide that investment expenses are "those expenses of the taxable year which are fairly chargeable against gross investment income." Treas.Reg. § 1–804–4(b)(1)(i). General expenses are those expenses "paid or incurred for the benefit of more than one department of the company rather than for the benefit of a particular department thereof." Treas.Reg. § 1.804–4(b)(1)(ii). Furthermore, all I.R.C.

§ 804(c) deductions must "relate" to investment income and may not be "disallowed by any other provisions of subtitle A of the Code." Treas.Reg. § 1.804–4(a).

**8.** During the years at issue, taxpayer paid taxes to the states of Minnesota, Illinois, and Florida in the following amounts:

| Year | Minnesota | Illinois | Florida |
|---|---|---|---|
| 1973 | $ 42,770 | $ 21,853 | $ 1,659 |
| 1974 | 122,797 | 27,673 | 2,072 |
| 1975 | 81,690 | 32,561 | 2,462 |
| 1976 | 98,153 | 33,063 | 3,840 |
| 1977 | 134,732 | 31,845 | 2,671 |
| Totals | $ 480,142 | $146,995 | $12,704 |

related in order to be deductible as an investment expense.

The most recent case to deal with this issue is *Northwestern Mutual Life Ins. Co. v. United States*, 7 Cl.Ct. 501 (1985), *aff'd*, 795 F.2d 74 (Fed.Cir.1986). In that case, the taxpayer instituted a tax refund suit when the IRS denied it a deduction for the state income taxes it paid to Illinois, Florida, Minnesota, and New York. The taxpayer argued that the state income taxes it paid could be deducted in full under I.R.C. § 804(a)(1) as an investment expense. The court held that although the taxes did not qualify as investment expenses because they were incurred for the benefit of more than one department, they did qualify as general expenses which could be in part assigned to and included in the investment expense deduction under I.R.C. § 804(c)(1). *Northwestern Mutual Life Ins. Co.*, 7 Cl.Ct. at 507.

The court stated:

The state taxes paid by plaintiff were paid for the privilege of conducting business or earning income within the states. They were therefore paid or incurred for the benefit of more than one department of the plaintiff, and were general expenses as that term is defined by the Treasury Regulations. In each state, the taxes were determined on the basis of the plaintiff's net investment income; they therefore had a reasonably direct relationship to investment income. Moreover, the taxes are reasonably susceptible of assignment to the investment department on the basis of the plaintiff's total gross investment income compared to its total gross income. The state taxes, therefore, are general expenses which can be in part assigned to and included in the investment expenses under I.R.C. § 804(c)(1).

*Id.* at 509.

■ We adopt the reasoning in *Mutual Life Ins. Co.* The state taxes paid by taxpayer were paid for the privilege of conducting business or earning income within the states in question. The Illinois statute imposes a tax "measured by net income" for "the privilege of earning or

receiving income" in the state. Ill.Ann. Stat. ch. 120, § 2–201(a) (Smith-Hurd 1970). The Florida taxing scheme is similar to that of Illinois. Fla.Stat.Ann. § 220.11 (West Cum.Pocket Part 1983). Minnesota imposes an excise tax on corporations measured by the "taxable net income for the taxable year" for "the grant to [the corporation] of the privilege of transacting or for the actual transaction of business within the state." Minn.Stat.Ann. § 290.02 (West 1962 and West Cum.Pocket Part 1983). The taxes were therefore paid or incurred for the benefit of more than one department and were general expenses as that term is defined by Treas.Reg. § 1.804–4(b)(1)(ii).

The state taxes also have the necessary direct relationship to investment income. In all three states, the taxes were determined on the basis of the taxpayer's net investment income. The Illinois and Florida tax statutes use life insurance company taxable income (LICTI) as the tax base. The district court found that under 26 U.S.C. § 802(b), taxpayer's LICTI for each of the years at issue consisted of its taxable investment income. The district court also found that Minnesota's tax was attributable solely to taxpayer's net investment income. These findings have not been challenged by the government. These state taxes therefore relate to investment income. Treas.Reg. § 1.804–4(a); *Northwestern Mutual Life Ins. Co.*, 7 Cl.Ct. at 506–09.

Finally, the taxes are reasonably susceptible of assignment to the investment department on the basis of the taxpayer's total gross investment income compared to its total gross income. The district court held that taxpayer had proved by a preponderance of the evidence that a reasonable method of allocating the state taxes to investment expenses each year was to multiply the state taxes by the ratio of taxpayer's gross investment income to its total income. Based on the record, this finding is not clearly erroneous. The state taxes, therefore, are general expenses which can be in part assigned to and included in the investment expenses under I.R.C. § 804(c)(1).

We affirm the district court's holding granting taxpayer a partial deduction for the state taxes it paid during the years at issue and denying it a deduction for the expenses related to the servicing of policy loans.