T.C. Summary Opinion 2007-26


UNITED STATES TAX COURT


JAMES M. AND RUTH J. RILEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23681-05S.                    Filed February 26, 2007.


James M. and Ruth J. Riley, pro sese.

<u>Marion K. Mortensen</u>, for respondent.


DAWSON, <u>Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies in petitioners' Federal income taxes and accuracy-related penalties under section 6662(a):

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|---------------------|
| 2001 | $5,674 | $1,134.80 |
| 2002 | 18,003 | 3,600.60 |
| 2003 | 11,840 | 2,368.00 |

Petitioners have not contested some of the adjustments respondent made that give rise to the deficiencies in question.[2] Other adjustments are computational,[3] and the resolution of those adjustments depends on our resolution of the substantive issues for decision.

_____

[2]In the notice of deficiency, respondent (1) disallowed a deduction of $1,600 for self-employed health insurance for 2001, (2) increased petitioners' 2001 dividend income from $1,692 to $1,881, (3) increased petitioners' self-employment taxes for 2002 and 2003 from $879 reported on the 2002 return to $7,002 and from $14,979 reported on the 2003 return to $15,397, and (4) disallowed the $427 alternative minimum tax (AMT) foreign tax credit carried forward from 2002 to 2003 resulting in AMT of $1,459 for 2003. In the petition, petitioners did not assign error to those adjustments.

[3]Respondent made the following computational adjustments resulting from the adjustments to income: (1) Increased the taxable amount of Social Security benefits for 2001 from $278 reported on the return to $6,574, (2) increased the deductions for self-employment tax for 2002 and 2003 from $440 reported on the 2002 return to $3,501 and from $7,490 reported on the 2003 return to $7,699, and (3) reduced the deduction for exemptions for 2003 from $5,978 reported on the 2003 return to $5,124.

The issues for decision are:

(1)  Whether petitioners are entitled to the deductions for depreciation of farm buildings and drainage tile that they claimed on Schedules F, Profit or Loss From Farming, for 2001, 2002, and 2003;

(2)  whether petitioners are entitled to elect under section 179 to expense in 2002 a portion of the cost of a truck placed in service in 2001;

(3)  whether petitioners are entitled to deductions for travel expenses they claimed on Schedules F and Schedules E, Supplemental Income and Loss, for 2001, 2002, and 2003; and

(4)  whether petitioners are liable for the accuracy-related penalty under section 6662(a) for each of the years at issue.

## Background

Some of the facts have been stipulated and are so found.

At the time the petition was filed petitioners resided in Salt Lake City, Utah.

James M. Riley (petitioner) worked as an extracting metallurgist for the Department of the Interior from 1953 to 1983.  Petitioner's father and grandfathers were cattle feeders.  Petitioner began his cattle feeding activity while he was employed with the Department of the Interior.  He was familiar with real estate transactions and bought and sold feeder cattle

and managed his farming operations.  His primary business is cattle feeding, and his tax home during the years at issue was in Utah.

After petitioner retired from the Department of the Interior, he bought three farms in Jackson County, Minnesota, from the Federal Farm Credit Association; namely, the DeMoore farm purchased in 1986, the Sioux Valley farm purchased in 1990, and the Ross farm purchased in 1997.  He raised corn and soybeans on the farms.  He used part of the corn crop to feed cattle.

Petitioner bought the DeMoore farm in 1986 for $129,000. The buildings on the farm included a house, four barns (the hog raising barn, the granary, the storage building, and a fourth barn), a pole shed, and two silos.  Petitioner used the house as an office and for his lodging when he was at the farm.  He stored old scrap items in the storage building, allowed others to store firewood in the pole shed, and parked a "farm car" in the granary.[4]  He did not use the pole shed, the silos, or the barns in his farming operations.

Petitioner purchased the 160-acre Sioux Valley farm in 1990 for $1,375 per acre.  The improvements on the Sioux Valley farm consisted of a house and a well.  He did not use the house or the well in his farming operations.

---

[4]Aside from petitioner's description of the vehicle as a "farm car", there is no evidence in the record as to the car's use.

Petitioner purchased the Ross farm in 1997 for $154,000. The improvements on the Ross farm consisted of two buildings (a barn and a storage building) and installed drainage tile. He did not use the barn in his farming operations but occasionally used the storage building to store soybeans.

Petitioner purchased a 2001 Dodge Truck for $35,000 for use in his farming activity. He used it to transport grain in Minnesota and when traveling to Montana, Wyoming, and South Dakota to find feeder cattle for purchase. During 2001, 2002, and 2003, petitioner drove the truck approximately 7,000 miles each year in his farming operations. He also has three other vehicles that he used while conducting his farming and rental activities.

Petitioner prepared and timely filed petitioners' Forms 1040, U.S. Individual Income Tax Return, for 2001, 2002, and 2003, using the cash basis method of accounting.

On Schedules E, petitioners reported rental income and loss from the rental of four houses. One house was reported as being in South Dakota, one in Minnesota, one in Iowa, and one in Utah. Petitioners reported a rental loss of $178 for 2001 and rental income of $5,032 for 2002 and $5,133 for 2003.

Petitioners reported income from farming on Schedules F. They reported a net farm loss of $29,350 for 2001 and net farm profits of $6,219 for 2002 and $156,492 for 2003.

On Schedules F, petitioners claimed depreciation deductions for the truck, the farm buildings on the DeMoore, Sioux Valley, and Ross farms, and the installed tile on the Ross farm using the straight-line method for the years at issue.

The truck was placed in service on January 1, 2001. On the 2001 return, petitioners claimed a $7,000 depreciation deduction for the truck, depreciating the $35,000 cost of the truck over 5 years using the straight-line method. On the 2002 return, petitioners attempted to elect to expense $24,000 of the cost of the truck under section 179. On the 2002 return, they deducted the $24,000 expensed amount plus $1,000 of depreciation for the truck. On the 2003 return, petitioners deducted $1,000 of depreciation for the truck.

Petitioner did not allocate the purchase prices of the DeMoore, Sioux Valley, and Ross farms between the land and the improvements on the farms. Rather, he estimated the fair market values of the improvements and used those amounts as his bases in the improvements. He estimated that the fair market value of the DeMoore farm buildings was $75,000, that the fair market value of the house on the Sioux Valley farm was $25,000, that the fair market value of the Ross farm buildings was $50,000, and that the fair market value of the tile installed on the Ross farm was $10,000.

Petitioners did not claim depreciation deductions for 1998 and 1999. They thought they could extend the depreciation periods for the assets for 2 years.

On the Schedules F for 2001, 2002, and 2003, petitioners reported depreciation and section 179 expensed amounts as follows:

| Item | Date Placed in Service | Cost or Other Basis | Recovery Period | Basis for Depreciation | Depreciation Deduction | Elected Sec. 179 Cost |
|---|---|---|---|---|---|---|
| **2001 Return:** | | | | | | |
| Truck | 1/2001 | $35,000 | 5 years | -- | $7,000 | -- |
| Farm buildings | 3/1986 | 75,000 | 15 years | -- | 5,000 | -- |
| Farm buildings | 3/1990 | 25,000 | 10 years | -- | 2,500 | -- |
| Farm buildings | 9/1997 | 50,000 | 10 years | -- | 5,000 | -- |
| Drainage tile | 9/1997 | 10,000 | 5 years | -- | 2,000 | -- |
| Total | | | | | 21,500 | |
| | | | | | | |
| **2002 Return:** | | | | | | |
| Truck | 1/2001 | $35,000 | 5 years | $4,000 | $1,000 | $24,000 |
| Farm buildings | 3/1986 | 75,000 | 15 years | -- | 5,000 | -- |
| Farm buildings | 3/1997 | 50,000 | 10 years | -- | 5,000 | -- |
| Drainage tile | 9/1997 | 10,000 | 5 years | -- | 2,000 | -- |
| Total | | | | | 13,000 | 24,000 |
| | | | | | | |
| **2003 Return:** | | | | | | |
| Truck | 1/2001 | $35,000 | 5 years | 11,000 | $1,000 | -- |
| Farm buildings | 9/1997 | 50,000 | 10 years | -- | 5,000 | -- |
| Drainage tile | 9/1997 | 10,000 | 5 years | -- | 2,000 | -- |
| Total | | | | | 8,000 | |

For each year at issue, petitioner deducted his travel expenses, including transportation, meals, and lodging, on Schedules F and E. He did not keep logs to substantiate dates he was away from home on business or the business purpose of the travel. He kept some, but not all, of his receipts for his gasoline, meals, and lodging expenses. He did not use the receipts to calculate his travel expenses. Instead, he used a formula to compute the travel expenses deducted on Schedules E and F each year.

Petitioner estimated that he traveled 15,000 miles each year for his rental and farming activities.[5] For each year, petitioner calculated his transportation expense by multiplying 15,000 miles by the standard mileage rate for the year ($.345 for 2001; $.365 for 2002; and $.36 for 2003).

Petitioner estimated that he was away from home 40 days each year for rental and farming business. He calculated his total meals and lodging expenses of $3,600 by multiplying the 40 days by $90, which he believed was the low-cost per diem lodging expense rate for the years at issue listed in Rev. Proc. 2000-39, 2000-2 C.B. 340.

---

[5]In addition to the 2001 truck, petitioner has three other vehicles that he uses (not exclusively) in his business activities. He estimated that he used all four to travel a total of 15,000 miles related to his business activity.

Petitioner allocated $1,400 of the total travel expenses to Schedule E and the remainder to Schedule F.  He allocated and deducted travel expenses on Schedule E for his rental and Schedule F for his farming activity as follows:

| Item | 2001 | 2002 | 2003 |
|------|------|------|------|
| Travel: | | | |
| Transportation | $5,175 | $5,475 | $5,400 |
| Meals & lodging | 3,600 | 3,600 | 3,600 |
| Total travel | 8,775 | 9,075 | 9,000 |
| | | | |
| Schedule E rental allocation | 1,400 | 1,400 | 1,400 |
| Schedule F farming allocation | 7,375 | 7,675 | 7,600 |

## Discussion

Respondent disallowed all travel expenses petitioners deducted on Schedules E and F and most of the depreciation petitioners deducted on Schedules F for 2001, 2002, and 2003. Petitioners bear the burden of proving that respondent's determinations in the notice of deficiency are erroneous.[6]  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and petitioners bear the burden of proving they are entitled to the deductions they claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

_____

[6]Petitioners do not claim that the burden of proof shifts to respondent under sec. 7491(a).  In any event, petitioners have failed to establish that they satisfy the requirements of sec. 7491(a)(2).  On the record before us, we find that the burden of proof does not shift to respondent under sec. 7491(a).

A.    Deductions Generally

A taxpayer may not deduct personal, living, and family expenses unless the Internal Revenue Code expressly provides otherwise; e.g., State and local real property taxes are deductible pursuant to section 164(a)(1).  Sec. 262(a).  Nor may a taxpayer deduct capital expenditures; i.e., amounts paid for new property or for permanent improvements or betterments made to increase the value of any property or estate.  Sec. 263(a)(1).  Instead, if the capital expenditure is for property used in a trade or business or held for the production of income, the taxpayer may be allowed a deduction for depreciation under section 167.  See, e.g., INDOPCO, Inc. v. Commissioner, supra at 83-84.

Taxpayers generally may deduct expenses that are ordinary and necessary in carrying on a trade or business under section 162(a), for the production or collection of income under section 212(1), or for the management, conservation, or maintenance of property held for the production of income under section 212(2).  The statutory prohibitions of sections 262 and 263 regarding deductibility of personal and capital expenses take precedence over the allowance provisions of sections 162 and 212.  Commissioner v. Idaho Power Co., 418 U.S. 1, 17 (1974); Sharon v. Commissioner, 66 T.C. 515, 523 (1976), affd. 591 F.2d 1273 (9th Cir. 1978).

B.   Depreciation

On Schedules F, petitioners claimed depreciation deductions for the truck, the farm buildings on the DeMoore, Sioux Valley, and Ross farms, and the installed tile on the Ross farm using the straight-line method for the years at issue.  Respondent disallowed $19,500 of the $21,500 depreciation claimed for 2001, $35,667 of the $37,000 claimed for 2002, and all of the $8,000 claimed for 2003.  Respondent allowed all of the $2,000 depreciation of the tile installed on the Ross farm deducted for 2001 and $1,333 of the $2,000 deducted for 2002.  Respondent disallowed all depreciation claimed for the farm buildings because petitioners had not established their bases in the property or shown that the assets met the requirements of section 167.  Respondent also disallowed depreciation and expensed deductions petitioners claimed for the truck.

1.   Depreciation of Farm Buildings and Tile

Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business.  The purpose of the deduction for depreciation is to allow the taxpayer to recover over the useful life of the property its cost or other basis. United States v. Ludey, 274 U.S. 295, 300-301 (1927).

Pursuant to section 168(a), the depreciation deduction for any tangible property generally is to be determined by using the

applicable depreciation method, the applicable convention, and the applicable recovery period. The period for depreciation of an asset begins when the asset is first placed into service. Sec. 1.167(a)-10(b), Income Tax Regs. Deductions for depreciation must be taken in the year in which depreciation occurs and cannot be taken in subsequent years by reason of a taxpayer's failure to deduct the depreciation allowance in prior years. Sec. 1.167(a)-10(a), Income Tax Regs.

Generally, depreciation is computed by using the cost of the property as its basis. Secs. 167(c), 1011, 1012; sec. 1.167(g)-1, Income Tax Regs. If depreciable property and nondepreciable property such as real property with improvements are bought for a lump sum, the cost must be apportioned between the land and the improvements. United States v. Hill, 506 U.S. 546, 559 (1993); sec. 1.167(a)-5, Income Tax Regs. In making this allocation, section 1.167(a)-5, Income Tax Regs., provides:

> In the case of the acquisition on or after March 1, 1913, of a combination of depreciable and nondepreciable property for a lump sum, as for example, buildings and land, the basis for depreciation cannot exceed an amount which bears the same proportion to the lump sum as the value of the depreciable property at the time of acquisition bears to the value of the entire property at that time. * * *

Thus, the relevant inquiry is the respective fair market values of the depreciable and nondepreciable property at the time of acquisition. Weis v. Commissioner, 94 T.C. 473, 482-483 (1990); Randolph Bldg. Corp. v. Commissioner, 67 T.C. 804, 807 (1977).

Petitioners claimed depreciation deductions for the buildings on the DeMoore farm, the Sioux Valley farm, and the Ross farm. Respondent argues alternatively that petitioners are not entitled to the depreciation deductions because they did not use the buildings in their farming activities, the depreciation periods had expired, and/or they have not established their cost bases in the buildings. We agree with respondent on all three points.

Petitioner bought the 160-acre DeMoore farm from the Federal Farm Credit Association in 1986 for $129,000. The buildings on the farm included a house, four barns (the hog raising barn, the granary, the storage building, and a fourth barn), a pole shed, and two silos. Petitioner did not allocate the cost of the farm between the land and the buildings. He estimated that the fair market value of the DeMoore farm buildings was $75,000 and allocated that amount to the buildings on the farm. He used the house as an office and for lodging. He did not use the pole shed, the silos, or the barns in his farming operations. On their returns, petitioners reported that the buildings were placed in service in March 1986, had a recovery period of 15 years, and had a cost basis of $75,000. They deducted $5,000 depreciation for 2001 and 2002.

Petitioners are not entitled to deductions for depreciation of the pole shed, the silos, or the barns for any of the years at

issue because petitioner did not use those structures in his farming or rental activities. Although petitioner used the house as an office and for his lodging when he was at the farm, petitioners are not entitled to deductions for depreciation of the house for the years at issue. They are not entitled to deductions for depreciation in 2002 because the 15-year depreciation period expired in March 2001. Petitioners did not claim depreciation deductions for 1998 and 1999. They thought that they could extend the depreciation periods for the assets for 2 years. The failure to claim the depreciation deductions in 1989 and 1999 does not extend the depreciation period into 2002 and later years. See sec. 1.167(a)-10(a), Income Tax Regs. Petitioners are not entitled to a deduction for depreciation of the house for 2001 both because they have not established their original cost basis in the house (i.e., they have not established the portion of the purchase price of the farm that is properly allocated to the house) and because they have not shown that the total depreciation allowed or allowable in earlier years had not reduced their basis in the house to zero.[7]

Petitioner purchased the 160-acre Sioux Valley farm from the Federal Farm Credit Association in 1990. He paid approximately $1,375 per acre or approximately $220,000 for the Sioux Valley

---

[7]Had petitioners established that their cost basis in the house was $75,000, they would have been entitled to depreciation of only $833.33 ($5,000 x 2/12) for 2 months in 2001, not the $5,000 claimed on the 2001 return.

farm. There were improvements on the Sioux Valley farm consisting of a house and a well. Petitioner did not use the house or the well in his farming operations. He estimated that the fair market value of the house on the Sioux Valley farm was $25,000 and depreciated it using the straight-line method over 10 years. Petitioners are not entitled to deduct the $2,500 they claimed for 2001 for depreciation of the house and the well because petitioner did not use the house or the well in his farming or rental activity and the 10-year depreciation period expired in 2000. Their failure to claim the depreciation deductions for 1998 and 1999 does not extend the depreciation period into later years. See sec. 1.167(a)-10(a), Income Tax Regs.

Petitioner purchased the Ross farm from the Federal Farm Credit Association in 1997 for $154,000. Improvements on the Ross farm buildings consisted of two buildings (a barn and a storage building) and installed drainage tile. Petitioner estimated that the value of the Ross farm buildings was $50,000. He did not use the barn in his farming operations but occasionally used the storage building to store soybeans. Petitioners are not entitled to depreciation deductions for the barn because petitioner did not use it in his farming or rental activity. Although he occasionally used the storage building

to store soybeans, petitioners are not entitled to depreciation deductions because they have not established the cost basis in the storage building.

With respect to depreciation deductions related to the tile installed on the Ross farm, petitioners claimed $2,000 for each of the years at issue. Respondent allowed all of the $2,000 depreciation of the tile deducted for 2001 and $1,333 of the $2,000 deducted for 2002. Respondent disallowed the $667 of the depreciation of the tile claimed for 2002 and all of the $2,000 deducted for 2003 because the 5-year useful life had expired in September 2002. Petitioners are not entitled to the claimed depreciation deductions beyond the useful life of the tile.

Petitioner testified that he paid approximately $129,000 for the DeMoore farm, approximately $1,375 per acre ($220,000 for 160 acres) for the Sioux Valley farm, and $154,000 for the Ross farm. He testified that all three properties were 160-acre farms that he purchased at distress prices from the Federal Farm Credit Association. Petitioner did not submit copies of the purchase agreements, deeds, mortgages, canceled checks, or any other documents to establish the purchase prices of the farms.

Petitioner submitted an undated letter from Dan Pike & Associates Auction Co. listing farmland and building lots sold by the company. Petitioner has written "2005" on the letter. The letter provides no evidence of the value of petitioner's farmland

or the buildings thereon at the time he purchased the farms.
Petitioner also submitted real property tax assessments for the
farms for 1997 and/or 1998.  The assessments do not separately
appraise the land and the improvements on the land.  Therefore,
the assessments provide no evidence of the comparative values of
the land and the improvements.

If a claimed deduction is not adequately substantiated, we
are permitted to estimate expenses when we are convinced from the
record that the taxpayer has incurred such expenses.  Cohan v.
Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  However, we
require a basis upon which an estimate may be made.  Vanicek v.
Commissioner, 85 T.C. 731, 743 (1985).  Here we have no such
basis.  The taxpayer must present credible evidence that provides
a rational basis for our estimate.  Id.  Cohan is inapplicable
"where the claimed but unsubstantiated deductions are of a sort
for which the taxpayer could have and should have maintained the
necessary records."  Lerch v. Commissioner, 877 F.2d 624, 628
(7th Cir. 1989), affg. T.C. Memo. 1987-295.  Under such
circumstances the Tax Court is under no obligation to guess as to
the amounts of the expenses.  Lutheran Mut. Life Ins. Co. v.
United States, 816 F.2d 376, 379 (8th Cir. 1987) (observing that
"given the lack of evidentiary support for taxpayer's claimed
deductions, we cannot say that the trial court erred in declining
to uphold at least some deduction under Cohan").

Petitioners ask us to agree with their estimate of the values of the improvements and land at the time of purchase. However, they offered only the vaguest estimates of the values of the improvements on the farms. It is not appropriate under Cohan for us to guess the allowable amounts of depreciation. See, e.g., Shaw v. Commissioner, T.C. Memo. 2003-111. We decline to do so. Consequently, we hold that petitioners have failed to substantiate their bases in the buildings.

2.    Depreciation of Truck

On the 2001 return, petitioners claimed a $7,000 depreciation deduction for the truck, depreciating the $35,000 cost of the truck over 5 years using the straight-line method. On the 2002 return, petitioners attempted to elect to expense $24,000 of the cost of the truck under section 179. On the 2002 return, they deducted the $24,000 expensed amount plus $1,000 of depreciation for the truck. On the 2003 return, petitioners deducted $1,000 of depreciation for the truck. Respondent disallowed all of those deductions.

Respondent concedes that the truck was placed in service on January 1, 2001, and was used solely for business purposes. Respondent also concedes that petitioners are entitled to a $7,000 deduction for depreciation of the truck for 2001, 2002, and 2003 but asserts that petitioners may not elect to expense $24,000 of the cost of the truck for 2002.

Section 179(a) generally allows a taxpayer to elect to treat the cost of section 179 property as a current expense in the year the property is placed in service, within certain dollar limitations. Sec. 179(b). The election must be made on the taxpayer's first income tax return (whether or not the return is timely) or on an amended return filed within the time prescribed by law (including extensions) for filing the original return for such year. Sec. 179(c)(1)(B); Genck v. Commissioner, T.C. Memo. 1998-105; sec 1.179-5(a), Income Tax Regs. A taxpayer may not elect to expense the cost of section 179 property in a year other than the year in which the property is placed in service. Kay v. Commissioner, T.C. Memo. 2002-197, affd. 85 Fed. Appx. 362 (5th Cir. 2003).

Petitioners' truck was placed in service in 2001, and petitioners were required to make the election under section 179 on their 2001 return. Petitioners did not elect to expense the cost of the truck on their 2001 return. Instead, they claimed a $7,000 depreciation deduction for the truck, depreciating the $35,000 cost of the truck over 5 years using the straight-line method. Their attempt to make the section 179 election on their 2002 return was ineffective. See Kay v. Commissioner, supra.

We hold that petitioners are entitled to deduct $7,000 for depreciation of the truck for each year in issue.

C.   Travel Expenses

In general, expenses incurred for a taxpayer's daily meals and lodging and for commuting between the taxpayer's residence and the taxpayer's place of business are nondeductible personal expenses.  Sec. 262(a); see, e.g., United States v. Correll, 389 U.S. 299 (1967); Commissioner v. Flowers, 326 U.S. 465, 472-473 (1946); Barry v. Commissioner, 54 T.C. 1210, 1214 (1970), affd. per curiam 435 F.2d 1290 (1st Cir. 1970); see also secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.  By contrast, traveling expenses, including amounts expended for meals and lodging, may be deducted if they are incurred while away from home in the pursuit of a trade or business or related to income-producing property.[8]  Secs. 162(a)(2), 212, 262.

1.   Record Keeping

A taxpayer is required to maintain records sufficient to establish the amount of his deductions.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the deduction, we may estimate the amount allowable in some circumstances.  Cohan v. Commissioner, 39 F.2d at 543-544.  There must be sufficient evidence in the record, however,

---

[8]For a taxpayer to be considered "away from home" within the meaning of sec. 162(a)(2), the taxpayer must be on a trip that requires the taxpayer to stop for sleep or a substantial period of rest.  United States v. Correll, 389 U.S. 299 (1967); Strohmaier v. Commissioner, 113 T.C. 106, 115 (1999).

to permit us to conclude that a deductible expense was paid or incurred in at least the amount allowed.  <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957).

For certain kinds of expenses otherwise deductible under section 162(a) or 212, such as travel, meal, and entertainment expenses, and those expenses attributable to "listed property", section 274(d) overrides the <u>Cohan</u> rule.  <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Listed property includes any passenger automobile[9] and any other property used as a means of transportation, under section 280F(d)(4)(A)(i) and (ii), unless excepted by section 280F(d)(4)(C) or (5)(B).[10]  Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowable.  Secs. 274(d), 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

---

[9]The term "passenger automobile" does not include trucks and vans excluded by regulation.  Sec. 280F(d)(5)(B)(iii).  Pursuant to sec. 1.280F-6(c)(3)(iii), Income Tax Regs., a passenger automobile does not include a truck or van that is a qualified non-personal-use vehicle defined under sec. 1.274-5T(k), Temporary Income Tax Regs., 50 Fed. Reg. 46033 (Nov. 6, 1985). Petitioner's truck is not excluded from the definition of passenger automobile.  See sec. 1.274-5T(k), Temporary Income Tax Regs., <u>supra</u>.

[10]Petitioner used his truck and three other vehicles for his rental and farming activities.  On the record before us, we find that petitioners' vehicles, which are not subject to any of the exceptions in sec. 280F(d)(4)(C) or (5)(B), are listed property within the meaning of sec. 280F(d)(4).

The elements that a taxpayer must prove with respect to an expenditure for traveling away from home on business, including meals, are: (1) The amount of each such expenditure for traveling away from home, except that the daily cost of the traveler's own breakfast, lunch, and dinner may be aggregated; (2) the time of each such expenditure; i.e., the dates of departure and return for each trip away from home and the number of days away from home spent on business; (3) the place of each such expenditure; i.e., the destinations or locality of travel, described by name of city or town or other similar designation; and (4) the business purpose of each such expenditure; i.e., the business reason for the travel or the nature of the business benefit derived or expected to be derived as a result of travel. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985). A taxpayer is required to

> substantiate each element of an expenditure or use
> * * * by adequate records or by sufficient evidence
> corroborating his own statement. Section 274(d)
> contemplates that a taxpayer will maintain and produce
> such substantiation as will constitute proof of each
> expenditure or use referred to in section 274. Written
> evidence has considerably more probative value than
> oral evidence alone. In addition, the probative value
> of written evidence is greater the closer in time it
> relates to the expenditure or use. A contemporaneous
> log is not required, but a record of the elements of an
> expenditure or of a business use of listed property
> made at or near the time of the expenditure or use,
> supported by sufficient documentary evidence, has a
> high degree of credibility not present with respect to
> a statement prepared subsequent thereto when generally
> there is a lack of accurate recall. Thus, the
> corroborative evidence required to support a statement

not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence.  The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in paragraph (c)(2) of this section [1.274-5T, Temporary Income Tax Regs.].

Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Respondent concedes that petitioners have substantiated the following travel expenses for fuel, food, and lodging:

| Item | 2001 | 2002 | 2003 |
|------|------|------|------|
| Fuel | $303.75 | $168.22 | $264.84 |
| Food | 87.39 | 82.73 | 120.17 |
| Motel | -0- | 689.05 | -0- |
| Total travel | 391.14 | 940.00 | 385.01 |

2.  Alternative Substantiation Methods

Petitioners assert that they are entitled to use the per diem rates to substantiate their travel expenses.  Section 274(d) permits the Secretary to provide by regulations that some or all of the substantiation requirements do not apply in the case of an expense that does not exceed an amount prescribed by the regulations.  Pursuant to section 1.274-5(g), Income Tax Regs., the Commissioner is authorized to prescribe rules in pronouncements of general applicability under which allowances for certain types of ordinary and necessary expenses for

traveling away from home will be regarded as satisfying the substantiation requirements of section 274(d). <u>Beech Trucking Co. v. Commissioner</u>, 118 T.C. 428, 434 (2002).

   3.   <u>Meals and Lodging</u>

Pursuant to the regulations, the Commissioner issued Rev. Proc. 2000-39, 2000-2 C.B. 340, Rev. Proc. 2001-47, 2001-2 C.B. 332, and Rev. Proc. 2002-63, 2002-2 C.B. 691, in effect for the years 2001, 2002, and 2003, respectively (collectively the revenue procedures). Section 4.01 of the revenue procedures provides an optional method for employers to substantiate the amounts of ordinary and necessary business expenses of an employee for lodging, meals, and/or incidental expenses incurred while traveling away from home. Section 4.03 of the revenue procedures also provides an optional method for employees and self-employed individuals to substantiate the amounts of business meals and incidental expenses incurred while traveling away from home. Petitioner relies on these revenue procedures to support the per diem expense deductions claimed for meals and lodging for the days he was away from home on business during the years at issue.

While section 4.01 of the revenue procedures authorizes the per diem method to substantiate lodging, meal, and incidental costs, that per diem method is available only to <u>employers</u> who pay a per diem allowance in lieu of reimbursing the actual

expenses an <u>employee</u> incurs while traveling away from home. Petitioner's claimed lodging expenses do not come under this provision because he was <u>self-employed</u> in connection with his farming and rental activities.

Accordingly, petitioner's claimed lodging expenses for each of the years at issue are not deemed substantiated under the revenue procedures. Respondent concedes that petitioner has substantiated lodging expenses of $689.05 for 2002, and the Court finds that petitioners may deduct $689.05 for 2002. Petitioner has not substantiated and is not entitled to deduct any amount for lodging expenses for 2001 or 2003.

Petitioner, as a self-employed individual, however, is entitled to rely on the per diem method allowed under section 4.03 of the revenue procedures for meals and incidental expenses. Section 4.03 of the revenue procedures allows a self-employed taxpayer to use the per diem method for meals and incidental expenses, provided the taxpayer "substantiates the elements of time, place, and business purpose of the travel" expenses. Respondent argues that petitioner failed to substantiate these elements and, therefore, is not entitled to use the per diem method for meals and incidental expenses for the years at issue. We disagree.

As previously stated, respondent has conceded that petitioners have substantiated and may deduct travel expenses for fuel, food, and lodging totaling $391.14 for 2001, $940 for 2002, and $385.01 for 2003.

Respondent's concession that petitioners have substantiated these expenses is a concession that petitioner incurred the expenses while he was away from home on business. Petitioners substantiated those expenses with receipts and bank statements provided to respondent and entered into the record of this case. The receipts and bank statements show purchases that petitioner made in States other than Utah dated as follows:

| Date | Source | State |
| --- | --- | --- |
| 4/22/2001 | Statement | Wyoming |
| 4/24/2001 | Statement | Wyoming |
| 4/25/2001 | Receipt/Statement | Wyoming |
| 4/26/2001 | Receipt/Statement | South Dakota |
| 4/28/2001 | Receipt/Statement | Minnesota |
| 5/3/2001 | Receipt | Iowa |
| 5/10/2001 | Receipt | Minnesota |
| 5/16/2001 | Receipt | Minnesota |
| 5/23/2001 | Receipt | Iowa |
| 5/30/2001 | Receipt | Minnesota |
| 6/3/2001 | Receipt | Minnesota |
| 6/5/2001 | Receipt | Minnesota |
| 6/7/2001 | Receipt/Statement | Minnesota |
| 6/14/2001 | Receipt | South Dakota |
| 6/15/2001 | Receipt | Nebraska |
| 6/16/2001 | Receipt/Statement | Minnesota |
| 6/17/2001 | Receipt | Wyoming |
| 9/5/2001 | Receipt/Statement | Wyoming |
| 9/6/2001 | Receipt/Statement | Wyoming |
| 9/6/2001 | Statement | South Dakota |
| 9/7/2001 | Receipt | Minnesota |
| 9/10/2001 | Statement | Minnesota |
| 9/15/2001 | Receipt/Statement | Minnesota |

| | | |
|---|---|---|
| 9/22/2001 | Receipt | Minnesota |
| 9/27/2001 | Receipt | Minnesota |
| 9/30/2001 | Receipt/Statement | Minnesota |
| 10/2/2001 | Receipt | Minnesota |
| 10/5/2001 | Receipt/Statement | Minnesota |
| 10/9/2001 | Receipt | Minnesota |
| 10/12/2001 | Receipt | Minnesota |
| 10/25/2001 | Receipt | South Dakota |
| 10/27/2001 | Receipt | Nebraska |
| 10/28/2001 | Receipt/Statement | Colorado |
| 10/29/2001 | Receipt/Statement | Wyoming |
| | | |
| 4/23/2002 | Statement | Wyoming |
| 4/24/2002 | Receipt | Wyoming |
| 5/3/2002 | Receipt | Wyoming |
| 5/21/2002 | Receipt | Minnesota |
| 5/29/2002 | Receipt | Minnesota |
| 6/11/2002 | Receipt | Nebraska |
| 8/14/2002 | Receipt | Wyoming |
| 8/15/2002 | Receipt/Statement | Wyoming |
| 8/15/2002 | Receipt/Statement | South Dakota |
| 8/19/2002 | Statement | Iowa |
| 8/22/2002 | Statement | Iowa |
| 8/22/2002 | Receipt | Nebraska |
| 8/23/2002 | Receipt/Statement | Nebraska |
| 8/23/2002 | Receipt | Minnesota |
| 9/10/2002 | Receipt | Minnesota |
| 9/19/2002 | Receipt | Iowa |
| 10/07/2002 | Receipt | Nebraska |
| 10/16/2002 | Receipt | Nebraska |
| 10/18/2002 | Receipt/Statement | Wyoming |
| | | |
| 4/30/2003 | Receipt | Wyoming |
| 5/1/2003 | Receipt | Nebraska |
| 6/12/2003 | Statement | Nebraska |
| 6/14/2003 | Statement | Wyoming |
| 9/3/2003 | Receipt/Statement | Montana |
| 9/4/2003 | Receipt/Statement | Wyoming |
| 9/5/2003 | Receipt/Statement | South Dakota |
| 9/26/2003 | Receipt | Minnesota |
| 10/16/2003 | Receipt/Statement | South Dakota |
| 10/17/2003 | Statement | South Dakota |
| 10/19/2003 | Receipt/Statement | Colorado |
| 10/20/2003 | Receipt/Statement | Wyoming |

The receipts and statements establish the dates and places of the travel, and respondent's concession that petitioner has substantiated the expenses evidenced by the receipts is a concession that he was away from home conducting business on those dates. Consequently, petitioners have satisfied the requirements of section 4.03 of the revenue procedures and are entitled to use the per diem method for the 33 days established for 2001, the 16 days established for 2002, and the 12 days established for 2003. Publication 1542, Per Diem Rates (For Travel Within the Continental United States) (Rev. Mar. 2001, Feb. 2002, and Feb. 2003), reports that the standard rate for meals and incidental expenses is $30 for all years at issue.

Section 274(n)(1)(A) provides that the amount allowable as a deduction for "any expense for food or beverages" is generally limited to 50 percent of the amount of the expense that would otherwise be allowable. The revenue procedures provide rules for applying the section 274(n)(1) 50-percent limitation to per diem allowances. Under section 6.05(1) of the revenue procedures, a taxpayer who computes the amount of his or her meals and incidental expenses under section 4.03 of the revenue procedures is required to treat that amount as an expense for food and beverages. The expenses are thus subject to the limitation of section 274(n)(1).

Under section 4.03 of the revenue procedures, petitioners substantiated meals and incidental expenses of $990 ($30 x 33 days) for 2001, $480 ($30 x 16 days) for 2002, and $360 ($30 x 12 days) for 2003. Those expenses are subject to the section 274(n)(1) 50-percent limitation. Therefore, we hold that petitioners may deduct meal and incidental expenses of $445 in 2001, $240 in 2002, and $180 in 2003.

Petitioner's ineligibility to claim greater amounts for meals and lodging is a result of his failure to maintain proper records of his expenses, including logs showing the dates, places, and business activity conducted while he was away from home.

### 4. Automobile/Truck Expenses

Automobile expenses if paid or incurred for business reasons or related to income-producing property are not personal and may be deductible under section 162(a) or section 212, even if not paid or incurred for travel away from home. In lieu of substantiating the actual amount of the ordinary and necessary expenses of using a vehicle for "local transportation [excluding commuting expenses] and transportation to, from and at the destination while traveling away from home", a taxpayer may use a standard mileage rate established by the Internal Revenue Service (standard mileage rate). Sec. 1.274-5(j)(2), Income Tax Regs. A deduction using the standard mileage rate is computed on a yearly basis and is in lieu of all operating and fixed costs of the

vehicle, including depreciation, maintenance and repairs, tires, gasoline, oil, insurance, and license and registration fees. Rev. Proc. 2002-61, sec. 5.03, 2002-2 C.B. at 616; Rev. Proc. 2001-54, sec. 5.03, 2001-2 C.B. at 530; Rev. Proc. 2000-48, sec. 5.03, 2000-2 C.B. at 570. The standard mileage rate is to be multiplied by the number of business miles traveled. Rev. Proc. 2002-61, sec. 5.02, 2002-2 C.B. at 618; Rev. Proc. 2001-54, sec. 5.02, 2001-2 C.B. at 532; Rev. Proc. 2000-48, sec. 5.02, 2000-2 C.B. at 571. The standard mileage rate is 34.5 cents per mile for 2001, Rev. Proc. 2000-48, secs. 5.01, 11, 2000-2 C.B. at 571, 577; 36.5 cents per mile for 2002, Rev. Proc. 2001-54, secs. 5.01, 11, 2001-2 C.B. at 531, 537; and 36 cents per mile for 2003, Rev. Proc. 2002-61, secs. 5.01, 11, 2002-2 C.B. at 618, 623. The use of the standard mileage rate establishes only the amount deemed expended with respect to the business use of a vehicle. Sec. 1.274-5(j)(2), Income Tax Regs. The taxpayer must still establish the amount (i.e., the business mileage), the time, and the business purpose of each such use. Id.

Petitioner testified that he used his truck and his other vehicles for business purposes each year and estimated that he drove 15,000 miles each year for his farming and rental activities. He used the standard mileage rate and deducted $5,175 (34.5 cents per mile) for 2001, $5,475 (36.5 cents per mile) for 2002, and $5,400 (36 cents per mile) for 2003.

Respondent concedes that petitioners drove the truck 7,000 miles each year and that the truck is used solely for business purposes. Although petitioners probably used their other vehicles for business purposes and drove more business miles than respondent conceded, their failure to substantiate the mileage on their other vehicles forecloses any use of the standard mileage rate for establishing the ordinary and necessary expenses of using those vehicles. Petitioner did not maintain a contemporaneous diary, calendar, or mileage log of his business travel, and he failed to prove that he otherwise made a record of the alleged business use of his other vehicles at or near the time of the use. He did not retain receipts for most of the expenses paid and did not establish the total business miles driven during any of the years at issue.

If petitioner uses the standard mileage rate for the 7,000 miles of business use of the truck, petitioners will be entitled to total deductions of $2,415 (34.5 cents per mile) for 2001, $2,555 (36.5 cents per mile) for 2002, and $2,520 (36 cents per mile) for 2003 for all operating and fixed costs of the vehicle, including depreciation, maintenance and repairs, tires, gasoline, oil, insurance, and license and registration fees. Respondent concedes that petitioners are entitled to depreciation deductions of $7,000 for the truck each year and have substantiated fuel expenses of $303.75 for 2001, $168.22 for 2002, and $264.84 for

2003.  The depreciation deductions alone exceed the amounts petitioners could deduct using the standard mileage rate.

The deductions computed under the standard mileage rate are in lieu of separate deductions for depreciation and actual operating costs.  Since petitioners are allowed a greater deduction for actual costs, they are not allowed a deduction for transportation costs using the standard mileage rate.  See, e.g., Tesar v. Commissioner, T.C. Memo. 1997-207; Velinsky v. Commissioner, T.C. Memo. 1996-180.

In addition to the allowable deduction of $7,000 for depreciation of the truck for each year in issue, petitioners are entitled to deduct fuel expenses of $303.75 for 2001, $168.22 for 2002, and $264.84 for 2003.

D.   Accuracy-Related Penalties

Respondent determined accuracy-related penalties against petitioners under section 6662(a) for the years in issue. Section 7491(c) places on the Commissioner the "burden of production" with respect to a taxpayer's liability for any penalty, addition to tax, or additional amount (collectively, penalty).  In order to satisfy the burden of production under section 7491(c), the Commissioner must produce evidence that it is appropriate to impose the relevant penalty.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has met this burden, the taxpayer must come forward with

persuasive evidence that the penalty does not apply.  Id. at 447.
The taxpayer may establish, for example, that an accuracy-related
penalty is inapplicable because it is attributable to an
understatement with respect to which the taxpayer acted with
reasonable cause and in good faith.  Sec. 6664(c)(1).  Whether a
taxpayer acted as such is a factual determination, in regard to
which the taxpayer's effort to assess the proper tax liability is
an important consideration.  Sec. 1.6664-4(b)(1), Income Tax
Regs.

Section 6662(a)(1) imposes a penalty in an amount equal to
20 percent of the portion of the underpayment attributable to
negligence or disregard of rules or regulations.  Negligence
includes any failure by the taxpayer to keep adequate books and
records or to substantiate items properly.  Sec. 1.6662-3(b)(1),
Income Tax Regs.  The term "disregard" includes any careless,
reckless, or intentional disregard.  Sec. 6662(c).  Disregard of
rules or regulations is careless if the taxpayer does not
exercise reasonable diligence to determine the correctness of a
return position that is contrary to the rule or regulation.  Sec.
1.6662-3(b)(2), Income Tax Regs.  A taxpayer is not liable for
the penalty if he shows that he had reasonable cause for the
underpayment and that he acted in good faith.  Sec. 6664(c).

Petitioners did not maintain adequate records to
substantiate the deductions they claimed on their 2001, 2002, and

2003 returns.  They claimed deductions for travel expenses that were improperly calculated using per diem rates without maintaining records of the dates, places, and business activity of the travel.  They did not produce records of the purchase prices of the farms or valid appraisals of the land and buildings at the time of the purchases.  They did not seek professional advice.  Petitioners have not shown that their underpayments were due to reasonable cause.  Accordingly, we hold that petitioners are liable for accuracy-related penalties under section 6662(a) for 2001, 2002, and 2003.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.